FILED
2014 Dec-04  PM 02:18
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

TRACY SELF,                          )
Plaintiff,                           )
                                     )
        vs.                          )
                                     )          6:13-cv-01702-LSC
CAROLYN W. COLVIN,                   )
Commissioner of Social Security,     )
                                     )
        Defendant.                   )
                                     )

MEMORANDUM OF OPINION

I.    Introduction

The plaintiff, Tracy Self, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB").  Mr. Self timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Self was forty-seven years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a tenth grade education. (Tr. at 140.) His past work experiences include employment as a heavy equipment operator, production worker, and rock truck driver. (Tr. at 143, 156.) Mr. Self claims that he became

disabled on September 8, 2010, due to osteoarthritis/degenerative disk disease of the lumbar spine, degenerative joint disease of the right shoulder status post shotgun wound, degenerative joint disease of the left knee, diabetes mellitus, obesity, a depressive order, an anxiety disorder, and borderline intellectual abilities. (Tr. at 12.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity. *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is engaged in substantial gainful activity, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational

requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or

combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.; see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Self meets the non-disability requirements for a period of disability and DIB and was insured through the date of her decision. (Tr. at 12.) She further determined that Mr. Self has not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's osteoarthritis/degenerative disk disease of the lumbar spine, degenerative joint disease of the right shoulder status post shotgun wound, diabetes mellitus, obesity, a depressive disorder not otherwise specified, and an anxiety order not otherwise specified are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, she found that these

impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 13.) The ALJ determined that Mr. Self has the following RFC: less than the full range of light work; he can occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry up to ten pounds; he can stand and/or walk, in combination with normal breaks, for up to six hours during an eight hour workday; he can sit, with normal breaks, for up to eight hours during an eight-hour workday; he cannot be required to perform push/pull movements with his right upper extremity or reach above the shoulder level; he has no limitations in his abilities to perform fine and gross manipulations; he can frequently climb ramps and stairs; he should never climb ladders, ropes, or scaffolds; he can frequently balance and occasionally kneel, stoop, and crouch but never crawl; he should avoid concentrated exposure to extreme cold and areas of vibration; he should avoid all exposure to industrial hazards; he can perform simple routine tasks requiring no more than short simple instructions and simple work-related decision making with few workplace changes; he can have occasional interaction with members of the general public. (*Id.*)

According to the ALJ, Mr. Self is unable to perform any of his past relevant work, he is a "younger individual," and he has a "limited education," as those terms

are defined by the regulations. (Tr. at 20.) She also determined that transferability of skills is not an issue in this case. (*Id.*) After eliciting testimony from a vocational expert ("VE"), the ALJ determined that there is a significant number of jobs in the national economy that Mr. Self is capable of performing, such as bond machine tender, scale operator, and plastic parts inspector. (*Id.*) The ALJ concluded her findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (*Id.*)

II.     Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its

judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion

Mr. Self alleges that the ALJ's decision should be reversed and remanded for four reasons. First, he believes that the ALJ should have found him disabled under Listing 12.05(C) (mental retardation) at step two of the sequential evaluation process. (Doc. 9 at 13.) Second, Plaintiff contends that the ALJ did not properly assess his impairments in combination at step two.  (Doc 9 at 16.) Third, he believes that the ALJ erred in finding him not credible with regard to his statement that he could not afford treatment.  (Doc 9 at 19.) Finally, Plaintiff contends that the ALJ showed a clear bias against him at his hearing. (Doc 9 at 21.)

A.    The ALJ's Alleged Failure to Consider Listing 12.05(C) (mental retardation) at Step Two

To meet a listing, a plaintiff must show a diagnosed condition that is included in the listings and provide objective medical reports documenting that his condition meets the specific criteria of the applicable listing and the duration requirement.  *See* 20 C.F.R. § 404.1525.  A diagnosis, alone, is insufficient to meet a listing. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).  " For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of the criteria, no matter how severely, does not

qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ must consider whether a claimant's impairment meets or equals a listing at step two of the sequential evaluation. *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984). However, the ALJ need not mechanically recite the fact that a claimant does not meet a listing in his decision, as this fact may be implied from the record. *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). Furthermore, if substantial evidence supports the ALJ's implicit decision that the claimant's impairment did not meet a listing, then an implied finding may be sufficient. *Keane ex rel. Parcelles v. Comm'r of Soc. Sec.*, 205 F. App'x 748, 751 (11th Cir. 2006) (citing *Hutchison*, 787 F.2d at 1463).

Under Listing 12.05(C), the plaintiff must prove mental retardation, which is defined as "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §12.05. Subpart C requires a valid verbal, performance, or full scale IQ of 60 through 70 and physical or other mental impairments imposing an additional and significant work-related limitation of function. *Crayton v. Callahan*, 120 F.3d 1217, 1219-20 (11th Cir. 1997).

In the present case, Mr. Self contends that the ALJ did not mention Listing

12.05(C) in the decision but that there is substantial evidence to support that he met the listing. (Doc. 9 at 14.)  In support, he notes that Dr. Alan Blotcky, Ph.D., who consultatively examined Plaintiff in April 2012 at the request of his attorney, administered an IQ test to Plaintiff, and Plaintiff's full scale score was 70. (Tr. at 325.) Dr. Blotcky stated that this score placed Plaintiff in the lower end of the borderline range of intellectual functioning. (*Id.*)

However, there is substantial evidence to support the ALJ's implicit decision that Mr. Self did not meet that particular listing.  As an initial matter, Plaintiff cannot prove mental retardation with a diagnosis of functioning in the borderline range of intellectual functioning.  *See Jordan v. Comm'r*, 470 F. App'x 766, 768-69 (11th Cir. 2012) (borderline intellectual functioning is a diagnosis mutually exclusive of mental retardation).  The clinical impression of borderline intellectual functioning rebuts the presumption of deficits in adaptive functioning, because an individual with borderline intellect does not have deficits in adaptive functioning manifested during the developmental period. Since Dr. Blotcky deemed the IQ score of 70 valid, his clinical impression that Plaintiff functions in the borderline range of intellectual functioning, means he determined that Plaintiff's mental impairment did not exhibit deficits in adaptive functioning during the developmental period, as required for a diagnosis of

mental retardation.   Thus, Plaintiff failed to establish he meets or equals the mental retardation listing even with an IQ score at 70. *See Harris v. Comm'r*, 2013 WL 363008, at *1 (11th Cir. Jan. 30, 2013) (affirming the ALJ's finding that claimant did not meet mental retardation listing despite a qualifying IQ score).

Furthermore, the ALJ discounted Dr. Blotcky's diagnosis of borderline intellectual functioning because it was inconsistent with Plaintiff's past work, which the VE testified was skilled to semi-skilled.  (Tr. at 19, 70.)  " A valid IQ score is not conclusive of mental retardation when the IQ score is inconsistent with other evidence in the record about claimant's daily activities." *Outlaw v. Barnhart*, 197 F. App' x 825, 827 (11th Cir. 2006)) (citing *Popp v. Heckler*, 779 F.2d 1487, 1499 (11th Cir. 1986)). In *Outlaw*, the court held that the claimant did not establish that he was disabled under Listing 12.05(C) because IQ scores from his development period showed he had an IQ of about 70, two psychologists concluded that he functioned in the borderline range of intellectual functioning, he had a long work history in semi-skilled positions and his daily activities were inconsistent with adult IQ scores. *Id.* at 826-27; *see also Humphries v. Barnhart*, 183 F. App' x 887, 889 (11th Cir. 2006) (holding that that ALJ's finding that the claimant did not meet listing 12.05(C) was supported by substantial evidence despite her IQ of 65, because she did not have deficits in her adaptive functioning and

she had worked in a school cafeteria for 21 years and as a manager had five employees under her supervision). The ALJ's findings are also bolstered by the fact that Dr. Blotcky met with the plaintiff on just one occasion and thus was not due any particular deference as he was not a treating physician. *Perkins v. Commissioner,* 553 F. App'x 870 (11th Cir. 2014) (holding that ALJ's decision to not credit a physician was supported in party by the fact that the physician was not a treating physician).

The categorization of borderline intellectual functioning coupled with the ALJ's finding that the diagnosis did not accord with the plaintiff's past relevant work are sufficient to support an implicit decision from the ALJ that Plaintiff did not meet Listing 12.05(C).

B.     The ALJ's Assessment of Plaintiff's Impairments in Combination

Next, Plaintiff argues that the ALJ did not properly assess the combination of impairments that as a whole created total disability to perform gainful employment. Social Security regulations require the ALJ to consider the combined effects of all impairments in evaluating disability:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of

sufficient severity. If we do find a medically severe combination of impairments, the combined effect of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523. The Eleventh Circuit has reiterated this point. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).  However, the Eleventh Circuit has " repeatedly held that an ALJ's finding regarding a claimant's 'impairment or combination of impairments' established that the ALJ had indeed considered the impact of the claimant's combined impairments." *Reliford v. Barnhart*, 157 F. App'x 194, 196 (11th Cir. 2005) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002)); *see also Hutchinson v. Astrue*, 2011 WL 148062, at *1-2 (11th Cir. Jan. 7, 2012) (" The ALJ specifically stated that Hutchinson did not have an 'impairment, individually or in combination, that met one of the listed impairments in evaluating step three of the process.  That statement shows that the ALJ considered the combined effects of Hutchinson's impairments during her evaluation." ).

In this case, the ALJ satisfied her burden by stating, " the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526). (Tr. at 13.)  This statement is

sufficient to indicate that the ALJ considered the impairments in combination.

Furthermore, in her decision, the ALJ discussed particular impairments at length. (Tr.

at 13-14.) Therefore, the ALJ has given sufficient information to allow this Court to

"conclude that [the ALJ considered [the claimant's] medical condition as a whole.

*Dyer v. Barnhart*, 395 F.3d at 1210 ("There is no rigid requirement that the ALJ

specifically refer to every peice of evidence in [her] decision . . . ."). As such, the ALJ

properly assessed Plaintiff's combination of impairments.

C.     The ALJ's Credibility Determination

In making a credibility evaluation, the ALJ considers objective medical evidence

and information from Plaintiff and treating or examining physicians, as well as other

factors such as evidence of daily activities, the frequency and intensity of pain, any

precipitating or aggravating factors, medication taken and any resulting side effects,

and any other measures taken to alleviate the pain. *See* 20 C.F.R. § 404.1529. A

credibility determination is a question of fact: like all factual findings by the ALJ, it is

subject only to limited review in the courts to ensure the finding is supported by

substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985),

*vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom. Hand

v. Bowen*, 793 F.2d 275 (11th Cir. 1986). The ALJ, not the Court, evaluates witnesses'

credibility. *See Richardson v. Perales*, 402 U.S. 389, 400 (1971). Indeed, "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

Here, Plaintiff specifically contends that the ALJ erred in not finding credible his allegation that he could not afford treatment.  However, the ALJ gave cogent reasons for discounting this testimony.  (Tr. at 18.) Specifically, the ALJ found that "there is no indication in the record that the claimant has sought government subsidized health care or sought health care and been turned down due to financial reasons." (*Id.*) The ALJ also added that the claimant was using tobacco and alcohol, indicating that he did have access to funds, but was not utilizing them for medical care. (*Id.*) Finally, the ALJ noted that Plaintiff testified that he was "embarassed" to ask for help, which undercut his claim of financial restrictions. (Tr. at 56.)

The ALJ found Plaintiff not credible for several other reasons as well. First, the ALJ noted Plaintiff's mental and physical impairment treatment has been entirely conservative (tr. at 15-16), and Plaintiff does not challenge this conclusion on appeal. *See Sheldon v. Astrue*, 268 F. App'x 871, 872 (11th Cir. 2008) ("conservative medical treatment for a particular condition tends to negate a claim of disability"). Plaintiff testified that his treating source never referred him to a mental health professional.

(Tr. at 51). The Eleventh Circuit has affirmed an ALJ decision to discredit a claimant's testimony regarding nonexertional impairments, such as pain, where the claimant's treatment was "entirely conservative in nature." *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). The ALJ also noted Plaintiff has not been compliant with his medication regimen. (Tr. at 15-16). The ALJ properly considered Plaintiff's failure to follow the recommendations of his doctors as evidence undermining the credibility of his allegations, in accordance with the regulations and case law. (Tr. at 15). *See* 20 C.F.R. § 404.1529; *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Given the foregoing, the ALJ properly found Plaintiff's credibility lacking.

D.     The Allegation that the ALJ was Biased against Plaintiff

Finally, Plaintiff argues that the ALJ showed clear bias against him when he chastised him at the hearing for not seeking low or no cost mental health treatment. The Eleventh Circuit has held that a claimant is entitled to both a full and fair hearing and that an ALJ shall not conduct a hearing if he or she is prejudiced with respect to a party to a case or has any interest in the outcome of the pending matter. *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996) (citing 20 C.F.R. § 404.940). The ALJ plays a crucial rule in the disability review process and "not only is he duty-bound to develop a full and fair record, he must carefully weigh the evidence, giving

individualized consideration to each claim that comes before him." *Id.* The ALJ's impartiality is integral to the system. *Id.*

However, ALJs are presumed to be unbiased and exercise their decision-making authority with honesty and integrity. *Schweiker v. McClure*, 456 U.S. 188, 195-196 (1982); *see also Withrow v. Larkin*, 421 U.S. 35, 47 (1975). These presumptions can only be overcome by demonstration of either a conflict of interest of the ALJ or another specific reason for disqualification. *McClure,* 457 U.S. at 195. The burden of overcoming these presumptions rests with the plaintiff. *Id.* at 196. Furthermore, the Supreme Court has explained:

> Judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 555 (1994). Expressions of impatience, dissatisfaction, annoyance, and even anger, without the establishment of bias, are within the bounds of what imperfect men and women occasionally display. *Id* at 556. Moreover, even if a hearing is "less than totally satisfactory," remand is unwarranted unless the claimant can show prejudice. *Kelley v. Heckler*, 761 F.2d 1538, 1540-41 (11th

Cir. 1985). A showing of prejudice " at least requires a showing that the ALJ did not have all of the relevant evidence before him, or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id.* at 1540. The main concern is whether there are any evidentiary gaps which would result in unfairness. *Id.*

In the case of the plaintiff, he is undoubtedly entitled to a full and fair hearing. However, he has not successfully overcome the presumption that the ALJ is unbiased. Here, despite the fact that the hearing may have been " less than totally satisfactory" to Plaintiff or the ALJ may have given remarks that were critical or disapproving, there is nothing in the record to show there are evidentiary gaps that resulted in unfairness. Thus, the ALJ did not act with a clear bias.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Self's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 4th day of December 2014.

L. Scott Coogler
United States District Judge
[160704]